IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-CR-30200-MJR |
| ) | |
| DeANGELO SANDERS, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

A.  Introduction and Procedural History

Indicted by the United States ("the Government") in December 2005 on two firearm charges and having been declared competent in June 2006, DeAngelo Sanders filed a series of pretrial motions, including a motion to suppress (Doc. 35), motions in limine (Docs. 36, 37), and a motion seeking sanctions for discovery violations (Doc. 62). Briefing was completed by August 2, 2006, and the Court conducted an evidentiary hearing two weeks later. At the conclusion of the hearing, the Court denied the suppression motion, denied the motion for sanctions, took one motion in limine under advisement, and partially granted/partially denied the other motion in limine (Doc. 75).

Both parties filed additional motions -- Sanders' motion in limine (Doc. 81), Sanders' motion to continue trial (Doc. 90), and the Government's motion to quash subpoena (Doc. 92). The Court ruled on those motions, plus the motion in limine previously taken under advisement, on October 10, 2006 (Doc. 96).

A four-day jury trial commenced October 16, 2006 and culminated in October 19, 2006 guilty verdicts on both charges.

Sanders timely moved for a new trial[1], and the parties have fully briefed the issues (*see* Docs. 110, 111, 113, 114). For the reasons stated below, the Court DENIES Sanders' new trial motion.

### B. Analysis

Federal Rule of Criminal Procedure 33 governs motions for new trial. Rule 33 provides that, upon a defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Three months ago, the United States Court of Appeals for the Seventh Circuit explained: "A defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006), *citing United States v. Berry,* 92 F.3d 597, 600 (7th Cir. 1996).[2]

---

[1] A new trial motion "grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7-day period." *Eberhart v. United States*, 546 U.S. 12 (2005)(per curiam). *Accord United States v. Ogle*, 425 F.3d 471, 476 (7th Cir. 2005). Sanders' new trial motion (filed on the seventh day after the jury verdicts herein) was timely.

[2] A different standard governs new trial motions based on newly-discovered evidence. As to such motions, a defendant must establish that the evidence: (1) came to his knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005); *United States v. Ryan*, 213 F.3d 347, 352 (7th Cir. 2000).

The district court may consider the credibility of the witnesses in making this determination. *United States v. Washington,* 184 F.3d 653, 657 (7th Cir. 1999). But the district court may <u>not</u> reweigh the evidence or set aside the verdict just because the court "feels some other result would be more reasonable." *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989). Rather, the evidence must preponderate so heavily against the verdict that it would be a miscarriage of justice to let the verdict stand. *Id.*

As to motions for new trial, the Seventh Circuit has warned: "Courts are to grant them sparingly and with caution, doing so only in those really 'exceptional cases.'" *Id.* Accord *United States v. DePriest*, 6 F.3d 1201, 1216 (7th Cir. 1993)(motions for new trial must be approached with great caution, and judges should be wary of second-guessing determinations of juries).

In the instant case, Sanders asserts that a new trial is warranted because the Court erred in ruling inadmissible a letter detailing Sanders' medical history. The letter in question was sent to Sanders from Lisa Sunderman, Regional Counsel for the Bureau of Prisons, in August 2006. Defense counsel maintains that the exclusion of this evidence deprived Sanders of "what may have been the sole witness on Sanders' behalf.

The Sunderman letter discussed the results of blood work done on Sanders in late January 2006 (upon his entry in to the BOP system) and indicated that, at that time, Sanders had been on the prescription medication Dilantin. Sanders contends that the fact he recently had taken Dilantin (an anti-seizure medication): (a) "would have allowed the jury to infer that [his] claims of seizures were not recent fabrications," and

(b) would have helped to explain the circumstances of Sanders' confessions (Doc. 111, pp. 2-3).[3]

Sanders further argues that the Department of Justice's possession of his blood sample (from the BOP intake process) was relevant to defense arguments about an untested dried reddish material found on the shotgun in question (Doc. 110, p. 2). Specifically, Sanders theorizes that if the jury knew that the Government not only found a dried red material on the shotgun but also possessed a sample of Sanders' blood with which to compare it, "the protracted deliberations of the jury might well have turned out differently" (Doc. 111, p. 3).

Reduced to simplest terms, Sanders believes a new trial is warranted, because the undersigned Judge employed too restrictive an interpretation of hearsay and relevance rules (*id*). The record does not support Sanders' assertions, and the Court is not persuaded.

At the heart of these issues lies the Sunderman letter. Dated August 24, 2006, that letter was prepared and sent in the context of *civil* litigation between Sanders and the Bureau of Prisons. Sunderman authored the letter which denied an administrative (Federal Tort Claims Act) claim filed by Sanders. *See* Doc. 81-2.

---

[3] Sanders was arrested on December 6, 2005. He made statements to law enforcement officers on December 6th (at the Alton Police Department) and December 8th (while being driven by federal agents to his arraignment). Via ruling on a suppression motion, this Court concluded that both statements (also referred to herein as "confessions") were completely voluntary and that Sanders had been advised of his *Miranda* rights.

The letter lists the medical conditions which Sanders reported upon entry into the BOP system, including his reference (on an intake screening form) to the prescription drug Dilantin.  The letter states that blood work done on January 25, 2006 revealed that Sanders' "dilantin levels were normal," indicating that he had "previously been taking dilantin regularly" (*id.*, p. 2).   Sunderman then recounts Sanders' visits to the mental health clinic and appointments with the staff psychiatrist, as well as the continuation of the prescription medications Sanders claimed to have been taking prior to his arrest (Dilantin and Trazadone).  The letter concludes (Doc. 81-2, p. 3):

> there is no evidence to indicate that you have sustained an injury or loss caused by the negligence or wrongful act or omission of any Bureau of Prisons' employee….  To the extent you are raising issues with your diagnosis, prescription, and transfer paperwork by a non-Bureau of Prisons agency, the United States may not be held liable for the negligence of a third party.

Defense counsel first sought a ruling that the Sunderman letter was admissible by filing a motion in limine one month before trial (Doc. 81).  Defense counsel claimed the letter came in either as the admission of a party-opponent under Federal Rule of Evidence 801(d)(2) or as a self-authenticating public document under Federal Rule of Evidence 902(1).

Before the Court ruled on the motion to *admit* the Sunderman letter (oddly styled as a motion "in limine"), defense counsel filed a routine ex parte motion requesting issuance of a subpoena for Sunderman (from the BOP's Southwest Regional Office in Atlanta, Georgia) to appear at Sanders' October 2006 trial (Doc. 83).  The Court

granted that motion via sealed ex parte Order on September 22, 2006 (Doc. 87).

On October 6, 2006, the Government moved to *quash* the Sunderman subpoena, on the grounds that (a) it was unreasonable to compel Sunderman to testify when defense counsel had not complied with applicable Department of Justice regulations (the "Touhy" regs), and (b) Sunderman had no personal knowledge of any facts and no relevant evidence to offer at trial (Doc. 92, p. 2).

At an in-Court hearing on October 10, 2006, the undersigned Judge *denied* Sanders' motion in limine seeking to permit introduction of evidence/argument regarding the Sunderman letter and *granted* the Government's motion to quash the trial subpoena for Sunderman. The undersigned Judge expressed serious concerns with the report at the start of the hearing (10/10/06 Transcript "Tr."; Doc. 115, pp. 6-7).

> It seems to me that report is hearsay within hearsay. First layer is Mr. Sanders' statements regarding his medical condition, emotional and physical state; and then the second layer is Miss Sunderman reporting.... One of those layers is obviated if she would testify live, but then the question becomes what is the relevance of it, and *is* this truly an admission of a party opponent as opposed to a history of a patient being given to a nonmedical provider that is clearly ... not for medical purposes....
>
> I think there are serious problems with the report with respect to hearsay within hearsay, but assuming you get past that and Miss Sunderman would testify live, what would permit her to do that? ... she merely reviewed the reports. There is no indication that I have that she has any specific knowledge with respect to medicine. Clearly she was not a treating physician, examining physician. She is not a health care expert. She is a lawyer.

After hearing argument from counsel, the Court issued the rulings adverse to Sanders, explaining the problems with both the Sunderman letter and the live testimony of Sunderman. The Court found the Sunderman letter/report to be hearsay (Doc. 115, p. 13), but noted that even if that was not so, Defendant had no way to make the needed causal link between evidence of seizures or mental/cognitive problems on the dates reflected Sunderman's letter and Sanders' December 2005 confessions (Doc. 115, pp. 14 - 16):

> I am not saying you can't use his medical history, his emotional state, all of the things surrounding that alleged confession consistent with Seventh Circuit pattern instruction 3.02,… but Lisa Sunderman is not competent and qualified to testify … about the effect of Dilantin…. I am not saying you can't get that into evidence, I am just saying that she is not the way to do it, either by report or in person….
>
> Let's say that you actually had the medical records from the physician who prescribed the Dilantin… and there was no question about their authenticity. That would *not* be admissible without making the connection between … Dilantin and his [Sanders'] refusal to give a statement, or giving a statement, or reluctantly giving a statement. In other words, you have to make the causal link between the medicine and the statement itself….
>
> [Y]ou are trying to prove that people who have seizures are more likely to give false confessions. I don't think you can do that without competent medical testimony, just like I don't think you can … argue that people who take Dilantin are more likely to give false confessions…. You need to make the link, and it has to be beyond guess, conjecture, or speculation, … where we are right now.

The Court properly quashed the Sunderman subpoena and properly declined

Sanders' request for a pretrial ruling that the Sunderman letter from the tort claims case was admissible in this criminal trial. Sanders insists that personal knowledge is not needed for admission of the letter under Rule 801(d)(2), but Sunderman's lack of personal knowledge was just one of the grounds articulated by the Court in its rulings. Patently clear at the October 10th hearing was the fact that defense counsel had no medical expert or other appropriate witness to establish the effects of the any prescription drugs Sanders had taken or the existence of a causal connection between such drugs and Sanders' mental state at the time of his statements/confessions.

Also bearing note is the fact that Sanders was evaluated by not only a Government psychiatrist (Dr. Jorge Luis of the Federal Detention Center in Miami, Florida) but also by an independently retained psychologist/psychiatrist (Dr. Daniel J. Cuneo of Belleville, Illinois). Sanders opted to not call Dr. Cuneo at trial. No evidentiary basis existed for admitting the Sunderman letter at trial.

Nor was Sunderman's testimony or letter needed to "refute" an inference that Sanders had fabricated a claim of taking anti-seizure medications. The trial testimony never focused on Sanders' medications or mental state. In fact, testimony was not even introduced at trial (nor argument made) regarding Sanders suffering from seizures. This issue was discussed extensively in pretrial hearings, motions, and orders, but the parties did not raise it at trial. So there was no inference (in the minds of the jurors) that Sanders was "faking" seizures, and nothing relating to seizures or anti-seizure medication required rebuttal by the defense.

Similarly unavailing is the argument that the Sunderman letter was relevant and should have been admitted to inform the jury that the Government had blood/DNA evidence from Sanders which they could have compared to the reddish substance on the shotgun. First, there was no evidence whatsoever that the red mark on the gun *was* blood. Moreover, months before trial, defense counsel was given the opportunity to test the red substance – which had been preserved – to see if it (a) was blood, and (b) belonged to Sanders (who was charged with unlawfully possessing the firearm).

The minutes of the July 21, 2006 status conference (Doc. 65) show that defense counsel raised the issue of testing the substance from the gun, and the Court agreed to order such testing to be conducted. But defense counsel asked for leave until July 25th to decide whether any testing was desired. The Court gave leave, and no request for testing ever followed. Having squandered the right to analysis of the red substance found on the gun, Defendant may not now complain that tests were not completed.

### C.   Conclusion

Sanders has presented no ground meriting a new trial under Rule 33. For all the above-described reasons, the Court DENIES his motion for new trial (Doc. 110).

IT IS SO ORDERED.

DATED this 18th day of January 2007.

                                           s/ Michael J. Reagan
                                           MICHAEL J. REAGAN
                                           United States District Judge